**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br>    *Plaintiff,*<br>v.<br>REFRESH HOME IMPROVEMENT, LLC; NUBE GONZALEZ, ASADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF MILTON GIOVANNY JEREZ CHABLA, DECEASED; 1266AA PARTNERS, LLC; and JUAN VELA d/b/a VELA ELECTRICAL CONTRACTOR (i/p/a VELA ELECTRICAL)<br>    *Defendants.* | Civil Action No. 20-10007<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This declaratory judgment action is brought by Plaintiff Nautilus Insurance Company ("Nautilus") to determine its insurance obligations to Defendant Refresh Home Improvement, LLC ("Refresh"). Currently pending before the Court is Nautilus's motion for summary judgment. D.E. 47. The Court reviewed the submissions in support and in opposition,[1] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Plaintiff's motion is **GRANTED**.

---

[1] Plaintiff's brief in support of its motion will be referred to as "Plf. Br." (D.E. 47-1); Defendant's opposition will be referred to as "Def. Opp." (D.E. 48); and Plaintiff's reply brief will be referred to as "Plf. Reply" (D.E. 49).

I. **BACKGROUND**[2]

   A. **The Underlying Action**

The Underlying Action arises out of the January 17, 2020 death of Milton Givoanny Jerez Chabla, while he was replacing gutters at 1266 Liberty Avenue, Hillside, New Jersey (the "Property"). SUMF ¶¶ 21, 24, 34. The Property includes a three-family home and is owned by 1266AA, a holding company created solely for the Property. SUMF ¶ 27. The permits for the Property were obtained by Refresh, a limited liability home improvement company.[3] SUMF ¶ 29; Ex. H,[4] 12/20/21 Okyne Dep. at 22:1-4; Ex. I, 1/31/22 Okyne Dep. at 161:22-24. Refresh retained Raulin Construction, LLC ("Raulin") as the general contractor to perform, or to retain subcontractors to perform, various work at the Property, including the replacement of gutters.

---

[2] The facts are drawn from Nautilus's Statement of Undisputed Material Facts ("SUMF"), D.E. 43, and related documents and exhibits. *See* D.E. 47-2–47-12. Nautilus submitted its Statement of Undisputed Material Facts pursuant to Local Civil Rule 56.1(a). Refresh responded that ¶¶ 22, 33, 34, 38, and 39 are disputed but failed to provide any citations to support its assertions. *See* D.E. 45-1. Federal Rule of Civil Procedure 56 requires that a party who asserts that a fact "is genuinely disputed must support the assertion by [] citing to particular parts or materials in the record," . . . or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)(B). If the non-movant fails to "properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Likewise, Local Civil Rule 56.1 requires an opponent denying any paragraphs in his responsive statement of material facts to "cit[e] to the affidavits and other documents submitted in connection with the motion." L. Civ. R. 56.1(a). Where paragraphs fail to comply with these requirements, a court may deem such paragraphs as admitted. *See, e.g.*, *7-Eleven, Inc. v. Sodhi*, No. 13-3715, 2016 WL 3085897, at *2 n.5 (D.N.J. May 31, 2016) (concluding that the paragraphs in which defendants "disagreed" without support to the record were deemed undisputed). Thus, all facts set forth in Nautilus's Statement of Undisputed Material Facts are deemed admitted for purposes of the current motion.

[3] Both Refresh and 1266AA are owned by Nii Okyne. SUMF ¶¶ 28-29. Okyne is the sole owner of Refresh, while 1266AA is owned by Okyne and Alan Finkelstein. *Id.*

[4] The Court's citation to "Ex. A" through "Ex. J" correspond to the exhibits to the Declaration of Anthony Miscioscia, D.E. 47-2.

2

SUMF ¶¶ 30, 31. Raulin then hired subcontractor Toledo Seamless Gutters ("Toledo") to perform the gutter replacement work. SUMF ¶¶ 32, 35, 36. On January 17, 2020, Toledo arrived at the Property with numerous individuals, including Chabla, to replace the gutters. SUMF ¶ 33; Ex. I, 1/31/22 Okyne Dep. at 164:3-9; Ex. J, Morocho Dep. at 30:11-20. While replacing the gutters, Chabla fell and sustained fatal injuries. SUMF ¶ 34; Ex. I, 1/31/22 Okyne Dep. at 106:4-11, 110:10-111:15, 176:15-18; Ex. J, Morocho Dep. 34:15-20.

On March 13, 2020, Nube Gonzalez, as Administrator Ad Prosequendum of the Estate of Chabla, filed a civil suit against Refresh and several other defendants in the Superior Court of New Jersey (the "Underlying Action"). SUMF ¶¶ 20, 21, 23; *see generally* Ex. B, Underlying Complaint. The Underlying Action alleges that due to the negligence of the defendants, Chabla was electrocuted on or about January 17, 2020, and died when a gutter that he was installing came in contact with a live wire. SUMF ¶ 24; Ex. B, Underlying Complaint ¶¶ 1, 21-22. Refresh requested that Nautilus defend and indemnify it in the Underlying Action, and Nautilus responded that Refresh is not entitled to coverage under the relevant policy. *See* Ex. G, 8/4/20 Nautilus Declination Letter.

### B. The Insurance Policy

Nautilus issued Refresh a commercial general liability insurance policy, effective from April 22, 2019 to April 22, 2020 (the "Policy"). SUMF ¶ 2, *see also* Ex. A, Policy. Refresh was represented by an insurance broker in connection with its purchase of the Policy. SUMF ¶ 3. The Policy included coverage for bodily injury and property damage (Coverage A), personal and

advertising injury (Coverage B), and medical payments (Coverage C). SUMF ¶ 8, *see also* Ex. A, Policy at CG 00 01 04 13 at 1 6, 8.[5] Nautilus agreed that it would

> pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply[.]

*Id.* at CG 00 01 04 13 at 1 § I(1)(a).

The Policy includes certain provisions that limit Refresh's bodily injury coverage. For example, Section I(1)(b) provides as follows:

> This insurance applies to "bodily injury" or "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
> (3) Prior to the policy period, no insured . . . knew that the "bodily injury" or "property damage" had occurred[.]

*Id.* at CG 00 01 04 13 at 1 §I(1)(b).

The Policy also excludes coverage for "bodily injury" to employees, contractors, volunteers, and other workers under specified conditions. *See generally id.* at L205. These conditions are set forth in an endorsement to the Policy, titled "Exclusion—Injury to Employees, Contractors, Volunteers, and Other Workers" (the "L205 Exclusion"). *Id.* The L205 Exclusion provides as follows:

---

[5] The Court's citations to Ex. A, the Policy, refer to the form number, followed by the page number of the form. Where applicable, the form number and page number are followed by the relevant section letters and/or numbers.

4

> This insurance does not apply to:
>
> e. Injury to Employees, Contractors, Volunteers and Other Workers "Bodily injury" to:
>
>> (1) "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or
>>
>> (2) Any insured's contractors', subcontractors' or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors arising out of and in the course of:
>>
>>> (a) Employment by any insured; or
>>>
>>> (b) Directly or indirectly performing duties related to the conduct of any insured's business; . . . .
>
> This exclusion applies:
>
>> (3) Whether any insured may be liable as an employer or in any other capacity[.]

*Id.* at L205 §(A)(e).

The terms of the L205 exclusion are preceded by a notice across the top of the page that reads: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." *See id.* at L205. The notice is followed by a statement that the endorsement modifies the policy by replacing the exclusion set forth under §I(2)(e), which excluded coverage for "[b]odily injury to an 'employee' of the insured,"[6] with the L205 Exclusion. *Id.*

---

[6] Under §I(2)(e), bodily injury coverage is excluded for an "employee" of the insured, which was defined to include a "lease worker," but not a "temporary worker" or a "volunteer worker." *See* Ex. A, Policy at CG 00 01 04 13 at 2 §I(2)(e); *id.* at CG 00 01 04 13 at 13, 14, 16 §V(5), (10), (19), (20). Section 5 defines a "[l]ease worker" as "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business," a "[t]emporary worker" as "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions," and a "[v]olunteer worker" as "a person who is not your 'employee' and who donates his or her work

5

### C. Procedural History

Nautilus filed its Complaint on August 4, 2020, seeking a declaration that it has no duty to defend and/or indemnify the insured, Refresh, for damages sought in the Underlying Action. D.E. 1.[7] On April 6, 2022, Nautilus sought leave to file a motion for summary judgment and submitted its statement of undisputed material facts. D.E. 43. Refresh filed its letter in opposition and responsive statement of undisputed material facts on April 20, 2022. D.E. 45, 45-1. On April 21, 2022, the Court granted Nautilus's request and Nautilus then filed the instant motion. D.E. 46, 47.

## II.  LEGAL STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary

---

and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary, or other compensation by you or anyone else for their work performed by you." *Id.* at CG 00 01 04 13 at 13, 14, 16 §V (5), (10), (19), (20).

[7] The Declaratory Judgment Act allows any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[T]here must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (internal quotation marks and citation omitted). Further, declaratory relief is appropriate when "the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil, Co.*, 312 U.S. 270, 273 (1941) (citation omitted). Here, there is an actual controversy as to whether the L205 Exclusion applies to the claims in the Underlying Action, and the case is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment because the Underlying Action is ongoing.

judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III.  ANALYSIS

Nautilus moves for summary judgment on the ground that Chabla's claims fall within the L205 Exclusion, and accordingly requests that the Court declare that it has no duty to defend or indemnify Refresh in the Underlying Action. *See* Plf. Br. at 1-2. Refresh first counters that there is a dispute as to whether Chabla was employed at the Property, and by whom, and thus whether the claims fall within the L205 Exclusion. Def. Opp. at 4-5. Refresh next argues that the L205 Exclusion violates public policy and should not be enforced. Def. Opp. at 5-6. The Court addresses each argument in turn.

#### A. Policy Coverage

Under New Jersey law,[8] "the words of an insurance policy are to be given their plain, ordinary meaning." *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001). When the terms of an insurance contract are clear, a court should enforce the policy as written and "not write for the insured a better policy of insurance than the one purchased." *Progressive Cas. Ins. Co. v. Hurley*, 765 A.2d 195, 202 (N.J. 2001) (quoting *Longobardi v. Chubb Ins. Co. of N.J.*, 582 A.2d 1257, 1260 (N.J. 1990)). "The burden is on the insured to bring the claim within the basic terms of the policy." *Reliance Ins. Co. v. Armstrong World Indus., Inc.,* 678 A.2d 1152, 1158 (N.J. Super Ct. App. Div. 1996) (citation omitted). It is the insurer's burden, however, to bring the matter within an exclusion in the policy. *Homesite Ins. Co. v. Hindman*, 992 A.2d 804, 807 (N.J. Super

---

[8] This case is based on diversity jurisdiction, 28 U.S.C. § 1332. *See* D.E.1, Compl. ¶¶ 27-30. The Court therefore interprets the contractual language of the Policy under the substantive law of the state whose law governs the action. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir. 1990) (citing *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938)). Here, the parties do not appear to dispute that New Jersey substantive law applies, so the Court applies that law. *See, e.g.*, Plf. Br. at 4-6, Def. Opp. at 5; *see also Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

Ct. App. Div. 2010) (quoting *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 16-17 (N.J. 1997)). "[E]xclusions are presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'" *Hampton Med. Grp., P.A. v. Princeton Ins. Co.*, 840 A.2d 915, 920 (N.J. Super. Ct. App. Div. 2004) (quoting *Miller v. McClure*, 742 A.2d 564, 568 (N.J. Super. Ct. App. Div. 1998)). The parties do not assert that any of relevant language is ambiguous nor does the Court find any ambiguity. As a result, the Court will construe the policy terms according to their plain meaning.

Here, the plain and ordinary meaning of the Policy excludes coverage for Chabla's claims against Refresh. As noted, the Policy's L205 Exclusion for "Injury to Employees, Contractors, Volunteers, and Other Workers" provides in relevant part as follows:

> This insurance does not apply to:
>
>> e. Injury to Employees, Contractors, Volunteers and Other Workers
>> "Bodily injury" to:
>>
>>> (4) "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or
>>>
>>> (5) Any insured's contractors', subcontractors' or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors arising out of and in the course of:
>>>
>>>> (a) Employment by any insured; or
>>>>
>>>> (b) Directly or indirectly performing duties related to the conduct of any insured's business[.]

Ex. A, Policy at L205(A)(e).

There is no dispute that Chabla was performing work at the Property when he was injured. SUMF ¶ 34. Similarly, there is no dispute that Chabla suffered bodily injury. Refresh retained

Raulin to work as the general contractor at the Property, and Raulin subcontracted with Toledo to perform the necessary gutter replacement work. SUMF ¶¶ 31-32. Toledo brought Chabla to the Property to perform this work, and while Chabla was performing this work, he sustained his injuries. SUMF ¶¶ 33-34. As a result, Mr. Chabla was an employee, contractor, volunteer, or other worker of Raulin's subcontractor, Toledo, performing "direct" or "indirect" duties "related to the conduct of an insured's business." Although Refresh contends that "[t]here is no evidence of whether Chabla was employed at the premises, and by whom," and thus whether the L205 Exclusion is applicable, *see* Def. Opp. at 4-5, Refresh does not provide any support for this assertion, and thus fails to satisfy its burden as the nonmoving party. *See Celotex Corp.*, 477 U.S. at 324 (explaining that after the moving party adequately supports its motion, the burden shifts to the nonmoving party to "designate specific facts showing that there is a genuine issue for trial.") (internal quotation marks and citation omitted).

### B. Public Policy

Refresh next appears to argue that even if the L205 Exclusion applies, the Court should find that "it would be against public policy to permit Nautilus Insurance to disclaim coverage for injuries sustained to an individual who was present at the jobsite." Def. Br. at 6. Refresh reasons that the exclusion provisions swallow the Policy, resulting in Refresh being "insured for absolutely no injuries under the policy." *Id.* Nautilus responds that the policy provides three areas of coverage, including "property damage," "personal and advertising injury," and "bodily injury," and that the L205 Exclusion does not apply to "bodily injury" *to third parties* who were not performing work at the site, such as a neighbor or passerby, nor does it negate coverage for "property damage" or "personal and advertising injury." Plf. Reply at 7. Nautilus adds that injured employees are covered by New Jersey's Worker's Compensation Act (the "Act"), which provides

10

that injuries that arise in and out of the course of employment are compensable. *Id.* at 7 (citing *N.J.S.A.* 34:15-1 to -142; *Schmidt v. Smith*, 713 A.2d 1014, 1016 (N.J. 1998)). Nautilus reasons that in light of the Act, employers typically obtain both workers' compensation and employer's liability coverage. Plf. Reply at 7 (citation omitted).

The Court disagrees that the exclusion provisions swallow the Policy because the Policy serves a separate, important purpose—that is to provide coverage for bodily injury to non-employee/contractor third parties. Such coverage "is traditionally written in conjunction with workers' compensation and is intended to serve as a gap-filler" to the worker's compensation policy. *Smith*, 713 A.2d at 1017 (internal quotation marks and citation omitted). Thus, it is not contrary to public policy for an employer's liability policy—here, the Policy—to exclude claims that fall within the scope of the Act. *See, e.g.*, *Rodriguez-Ortiz v. Interstate Racking & Shelving, II, Inc.*, No. A-1614-19, 2021 WL 4026174, at *5-8 (N.J. Super. Ct. App. Div. Sept. 3, 2021), *cert. denied*, 263 A.3d 1102 (N.J. 2021) (distinguishing between coverage provided under the workers' compensation policy and the employer's liability policy, and finding that under the employer's liability portion of policy, the insurance company did not have a duty to indemnify because that portion of the policy expressly excluded claims compensable through workers' compensation, and the claims at issue "rest[ed] exclusively within the workers' compensation system.").

## IV.   CONCLUSION

For the reasons set forth above, Nautilus's motion for summary judgment is granted. Nautilus has no duty to defend or indemnify Refresh in the Underlying Action. An appropriate Order accompanies this Opinion.

Date: December 14, 2022

_____
John Michael Vazquez, U.S.D.J.